UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| ANNE M. DUBE, | ) | |
| | ) | |
|     *Plaintiff* | ) | |
| | ) | |
| v. | ) | *Docket No. 06-20-P-C* |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| *Commissioner of Social Security,* | ) | |
| | ) | |
|     *Defendant* | ) | |

### *REPORT AND RECOMMENDED DECISION[1]*

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the questions whether the administrative law judge erred in his assessment of the plaintiff's dysthymic disorder, in his failure to find that her obesity was a severe impairment, in his assessment of her allegations of pain and in assessing her credibility. I recommend that the commissioner's decision be affirmed.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that, while the plaintiff had alleged multiple impairments including diabetes, bilateral foot neuropathy, tendonitis of the wrist, depression, agoraphobia, left hip arthritis, hypertension, bilateral carpal tunnel syndrome, obesity and

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(C)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on (*continued on next page*)

1

degenerative disc disease, none of these impairments significantly limited her ability to perform basic work-related tasks and thus none of them was severe, Findings 2 & 3, Record at 16; and that she accordingly was not under a disability as that term is defined in the Social Security Act at any time through the date of the decision, Finding 4, *id*. The Appeals Council declined to review the decision, *id*. at 4-6, making it the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15,16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge in this case reached Step 2 of the sequential process, at which stage the plaintiff bears the burden of proof. However, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1123 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id*. at 1124 (quoting Social Security Ruling 85-28).

---

September 22, 2006, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority and page references to the administrative record.

**Discussion**

The plaintiff contends first that the administrative law judge erroneously failed to find that her mental impairment was severe. Plaintiff's Itemized Statement of Specific Errors ("Statement of Errors") (Docket No. 8-1) at 2-4. She does not specify the mental impairment at issue, but relies on the report of a psychologist who examined her at the request of the state agency, Joseph F. Wojcik, Ph.D., stating that he "diagnosed [her] with a dysthymic disorder characterized by symptoms of anxiety, agoraphobia and depression of approximately ten years duration" and assigned her "a GAF of 50 which is indicative of significant symptoms." *Id*. at 2. Without citation to authority, she asserts that this Global Assessment of Functioning ("GAF") score reflects "[s]erious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id*. at 3.[2] She also faults the administrative law judge for allegedly failing to comply with the requirement of 20 C.F.R. § 416.920a(e)(2) to discuss certain specific factors in reaching a conclusion about the severity of her mental impairment. *Id*. at 3. *See also* 20 C.F.R. § 404.1520a(e)(2). Finally, she contends that her school records, which were submitted at the time of the hearing before the administrative law judge, show a "very low level of function in school," *id*. at 4, although she does not explain how this evidence would support a finding that her mental impairment at the time of the hearing was severe.

Dr. Wojcik's evaluation, which was based on a single interview with the plaintiff and a review of records, Record at 271, stated that the plaintiff was applying for disability benefits "due to . . . various physical ailments and depression," *id*. at 274, and that the depression "is of approximately 10

---

[2] The *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 2000) ("DSM-IV"), published by the American Psychiatric Association, defines the range in GAF from 41 to 50 in the terms used by the plaintiff. It defines the range from 61 to 70, which is the range in which the plaintiff's treating counselor assigned a GAF approximately two years before Dr. Wojcik's interview with the plaintiff, Record at 323, as "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household) but generally functioning pretty well, has (*continued on next page*)

years duration," *id*., but it is clear that the statement as to duration is based solely on the plaintiff's own report to Dr. Wojcik, *id*. at 273. Dr. Wojcik also concluded that "[i]t is unclear as how [sic] she might function in a job setting." *Id*. at 274. There is no evidence of suicidal ideation, severe obsessional rituals or frequent shoplifting in Dr. Wojcik's report. The plaintiff reported to Dr. Wojcik that she was not experiencing suicidal ideation or intent. *Id*. at 273. She did report "social withdrawal." *Id*.

The administrative law judge considered Dr. Wojcik's report, noting particularly that the plaintiff had never required psychiatric hospitalization and was not currently taking any anti-depressant medications. *Id*. at 15. The administrative law judge stated that he "also agrees with the DDS assessment completed in June 2003 by Brenda Sawyer, Ph.D., and finds that the claimant has depression that does not constitute a severe impairment since it result in Part B functional limitations that cause only mild limitation in her activities of daily living, social functioning, and concentration." *Id*. at 16. Dr. Sawyer completed a psychiatric review technique form after reviewing Dr. Wojcik's report, including the assigned GAF of 50, *id*. at 136, in which she concluded that the medically determinable impairment of dysthymia, *id*. at 127, was not severe, *id*. at 124, assigning a "mild" degree of limitation to activities of daily living, maintaining social functioning and maintaining concentration, persistence or pace, *id*. at 134. Counsel for the plaintiff made much at oral argument of the fact that Dr. Sawyer did not review the school records on which the plaintiff relies, but was unable to indicate any specific entries in the school records which might have changed Dr. Sawyer's conclusions.

The plaintiff contends that the administrative law judge could not rely on Dr. Sawyer's assessment because it "is not a fair or reasonable analysis given the symptoms observed by Dr.

---

some meaningful interpersonal relationships." DSM-IV at 34.

4

Wojcik and the GAF of 50 that he assigned." Statement of Errors at 3. However, Dr. Wojcik was unable to state how the plaintiff would function in a job setting. This is not the equivalent, as counsel for the plaintiff stated at oral argument, of a finding by Dr. Wojcik that he was "not sure she could function in a work setting." Nothing in his report contradicts Dr. Sawyer's conclusions. The administrative law judge would not be allowed to reach a conclusion based on his own evaluation of Dr. Wojcik's findings because an administrative law judge is not qualified to interpret raw data in a medical (or psychological) record. *Manso-Pizarro*, 76 F.3d at 17. Yet, the plaintiff asks this court to invalidate the commissioner's conclusion based on the plaintiff's own lay evaluation of those findings, in the face of contrary findings in Dr. Sawyer's report. Under these circumstances, this court cannot do what the administrative law judge could not do. The administrative law judge was entitled to rely on Dr. Sawyer's findings, particularly in the absence of any contrary medical evidence. *See, e.g., Rose v. Shalala*, 34 F.3d 13, 18 (1st Cir. 1994).

The regulation cited by the plaintiff provides that

> the written decision issued by the administrative law judge . . . must incorporate the pertinent findings and conclusions based on the [PRTF]. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. § 416.920a(e)(2); *see also* 20 C.F.R. § 404.1520a(e)(2). The functional areas described in paragraph (c) of section 416.920a are activities of daily living, social functioning, concentration, persistence or pace and episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The administrative law judge's opinion incorporates the pertinent findings and conclusions of Dr. Wojcik and Dr. Sawyer. Record at 15, 16. It includes a specific finding as to the degree of limitation

5

in three of the four functional areas.[3] The written opinion shows the history of psychological examination of the plaintiff; there are no reported laboratory findings with respect to any mental impairment in the administrative record. The opinion complies with the regulatory requirements.

The plaintiff next argues that the administrative law judge should have found her obesity to be a severe impairment. Statement of Errors at 4. She contends that the opinion failed to comply with Social Security Ruling 02-1p because the administrative law judge failed to note that the plaintiff, with a body mass index ("BMI") of 40, "is in the most serious category for obesity" and failed to address directly her obesity, "[i]n particular, . . . fail[ing] to discuss or apparently even consider[] the impact of her massive obesity on her back problems." *Id*. She asserts that the administrative law judge's failure to "do an individualized assessment of the impact of obesity" on her functioning, Social Security Ruling 02-1p, reprinted in *West's Social Security Reporting Service* Rulings (Supp. 2004), at 263, requires remand. Statement of Errors at 4.

Assuming *arguendo* that the administrative law judge failed to perform such an assessment and that the plaintiff's unsupported assertion that a BMI of 40 "is in the most serious category" is correct, any such failure by the administrative law judge was harmless error. The state-agency reviewer whose physical residual functional capacity assessment is the source for the BMI of 40, Record at 123, concluded that the plaintiff's physical impairments were "non-severe," *id*., as did another physician-reviewer, *id*. at 145. The plaintiff's treating physician in 2000 stated: "In my opinion, patient's incessant seeking of disability is totally unjustified. . . . Magnifies problems, avoids employment." *Id*. at 159. The same physician told the plaintiff in 1998 that she had no disability. *Id*.

---

[3] The PRTF completed by Dr. Sawyer reports "none" as the degree of limitation for episodes of decompensation. Record at 134. The administrative law judge's opinion does not specifically mention this functional area, but a finding of no limitation in this area is necessarily implied in language used in the decision: "the claimant has depression that does not constitute a severe impairment since it results in Part B functional limitations that cause only mild limitation in her activities of daily living, social functioning, and concentration." *Id.* at 16.

at 175.  In 2002 and 2003, a different treating physician stated in letters to the state disability determination service that "I do not feel the patient is in any way restricted to do physical or mental work-related activities," *id*. at 252, and "I do not feel the patient has any physical restrictions on her ability to do physical activity such as standing, sitting, walking, lifting, carrying, bending, handling objects, hearing, speaking or traveling.  I also do not feel the patient has any restrictions on mental activities such as understanding and memory, sustained concentration and persistence, social interaction and adaptation," *id*. at 254.  The administrative law judge referred to both of these evaluations in his opinion.  *Id*. at 14-15.  Given this evidence, the failure to perform in the opinion a specific evaluation of the effect of the plaintiff's obesity on her ability to perform work-related activities would obviously be a harmless error.

The plaintiff next attacks the administrative law judge's evaluation of her claims of pain.  Statement of Errors at 5-7.  She characterizes the opinion's assessment of her pain as "perfunctory." *Id*. at 6.  This argument may only be made after the plaintiff has carried her burden to establish the existence of a clinically determinable medical impairment that could reasonably be expected to produce the pain of which she complains.  20 C.F.R. §§ 404.1529(b), 416.929(b).  Given the statements of the plaintiff's treating physicians already quoted above and the observations of one of the state-agency physician reviewers with respect to the plaintiff's claims of pain, Record at 145, it is doubtful that the plaintiff has carried that burden.  Even if she had, however, and even if the administrative law judge's consideration of her testimony about pain was insufficient under the cited regulation, any such error would again be harmless.

Finally, the plaintiff contends that the administrative law judge failed to develop the record sufficiently before assessing her credibility.  Statement of Errors at 7-9.  First, contrary to the plaintiff's assertion, *id*. at 8, the administrative law judge's ultimate conclusion was not solely "based

7

on an alleged lack of credibility." To the contrary, the opinion explicitly relies on "the conclusions made by DDS" and "the opinions of two former treating physicians." Record at 16. Second, there is ample evidence in the record supporting the administrative law judge's conclusions. His discussion of the plaintiff's credibility is indeed sketchy, but there is more than enough evidence in the record to support his conclusion in that regard. On this record, no reasonable reviewer could come to an ultimate conclusion different from that reached by the administrative law judge and any error in dealing with the plaintiff's credibility is accordingly harmless.[4]

In addition, none of the hospital records apparently submitted after the hearing and cited by the plaintiff, Statement of Errors at 8, requires a different outcome. To the extent that any of these entries can reasonably be construed as contradicting the statements of the plaintiff's treating physician during the year preceding the hearing, the administrative law judge was entitled to adopt the findings of the treating physician, who had a treating relationship with the plaintiff while the physicians and nurses seen by the plaintiff in a hospital emergency room clearly did not.

### Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

---

[4] In addition, as noted by counsel for the commissioner at oral argument, credibility is not relevant at Step 2 of the sequential review procedure, which was the step reached in this case. A Step 2 determination must be made only on the medical evidence, not by the plaintiff's own testimony about symptoms or their effect on her. 20 C.F.R. §§ 404.1512(c), 416.912(c); *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991).

Dated this 29th day of September, 2006.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge